UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICHARD ORTOLI,<br><br>                      Plaintiff,<br>    v.<br><br>OCEANGATE INC. et al.,<br><br>                      Defendants. | CASE NO. 2:24-cv-01223-LK<br><br>ORDER GRANTING MOTION TO REMAND |

This matter comes before the Court on Plaintiff Richard Ortoli's Motion to Remand. Dkt. No. 14. Ortoli contends that Defendant Janicki Industries, Inc., a forum defendant, improperly removed this case based on "snap removal" after the case was filed but before it was served. *Id.* at 1. Ortoli also argues that the removal was improper because he has asserted a claim under the Jones Act, 46 U.S.C. § 30104 et seq., and Jones Act claims are not removable even if there is complete diversity and no forum defendants. *Id.*[1] For the reasons set forth below, the Court grants the motion and remands this case.

---

[1] Because this matter can be decided based on the written submissions, the Court denies the parties' requests for oral argument. *Id.* at 1; Dkt. No. 19 at 1.

ORDER GRANTING MOTION TO REMAND - 1

I. BACKGROUND

This matter arises out of the June 2023 implosion of the submersible TITAN in the waters of the North Atlantic off the coast of Newfoundland as it descended to the shipwreck of the Titanic; the implosion tragically killed all those on board. Dkt. No. 1-1 at 2–3. One of those who died was Paul-Henri Louis Emile Nargeolet, a diver and adventurer who had participated in 37 dives to the wreckage of the Titanic. *Id.* at 3.

On August 6, 2024, Ortoli, as Administrator CTA of Nargeolet's estate, filed suit in King County Superior Court against Defendants OceanGate, Inc., the Estate of R.S. Rush III, Tony Nissen, Electroimpact Inc., Janicki Industries, Inc., and Hydrospace Group, Inc. *Id.* at 2–3. Ortoli asserted claims for vessel unseaworthiness, wrongful death, negligence, and gross negligence under general admiralty law; negligence and gross negligence under the Jones Act; products liability and wrongful death under Washington state law; and pre-death pain and suffering under the Jones Act and/or Washington law. *Id.* at 17–26.

Ortoli alleged in his complaint that Rush formed OceanGate to design and construct "manned deep-sea submersibles, including TITAN, primarily for the purpose of diving to and exploring the wreckage of the Titanic." *Id.* at 6. OceanGate and the other Defendants "designed, constructed and operated TITAN, in almost every way, in a manner outside the norms of the diving community and industry, driven by R[ush]'s apparent obsession with being remembered for 'innovation[.]'" *Id.* at 3. Ortoli contends that Defendants failed to heed warnings about TITAN's safety, and the vessel was fundamentally incapable of diving to the depth of the Titanic wreckage. *Id.* at 11, 18.

On August 9, 2024, Janicki removed the case to this Court before any Defendant was served. Dkt. No. 14 at 2. The notice of removal asserted that this Court has jurisdiction based on diversity. *Id.* at 2–3. According to the complaint, Ortoli is a citizen of Florida who was appointed

as personal representative by a New York court, Dkt. No. 1-1 at 4, and the Defendants are all citizens of the other states. *Id.* at 4–5 (listing OceanGate, the Estate of R.S. Rush III, Electroimpact, and Janicki as Washington citizens). On September 9, 2024, Ortoli filed a motion to remand, arguing that Janicki improperly engaged in "snap" removal before it was served, and that his Jones Act claim is not removable and requires remand. Dkt. No. 14.[2]

## II.  DISCUSSION

Because the Court finds that the case was not removable, it grants Ortoli's motion to remand and does not consider his other argument that Janicki improperly engaged in snap removal. Nor does the Court consider the Estate of R. S. Rush III's or Electroimpact's separately filed motions to dismiss, Dkt. Nos. 26, 34, because the Court "first resolves doubts about its jurisdiction over the subject matter," *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 578 (1999).

### A.  Legal Standard

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists[.]" *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). This determination is an "inflexible" threshold requirement that must be made "without exception, for jurisdiction is power to declare the law and without jurisdiction the court cannot proceed at all in any cause." *Ruhrgas AG.*, 526 U.S. at 577 (cleaned up). "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c); *see also Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004).

Removal of a civil action to federal district court is proper when the federal court would

---

[2] Ortoli avers that his motion to remand was timely because the 30th day after removal fell on Sunday, September 8, 2024, and the deadline to file a motion to remand was therefore extended to the next business day, September 9, by operation of Federal Rule of Civil Procedure 6(a). Dkt. No. 14 at 4 n.1. Defendants do not contest that point. *See generally* Dkt. No. 19 (Janicki's response); Dkt. No. 24 (Electroimpact's Joinder in Janicki's Opposition); *see also Hurt v. Dist. of Columbia*, 869 F. Supp. 2d 84, 86 (D.D.C. 2012) (finding that the 30-day period was extended to the next court day under Rule 6(a)).

have original jurisdiction over the state court action. 28 U.S.C. § 1441(a). Federal jurisdiction exists over all civil actions where the matter in controversy exceeds $75,000 and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* Doubts as to removability are thus resolved in favor of remanding the case to state court. *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003).

**B.    Remand is Warranted**

As set forth above, Ortoli pleaded a claim under the Jones Act, 6 U.S.C. § 30104 *et seq.* Dkt. No. 1-1 a 19 ("Plaintiff brings this cause of action against Defendants, pursuant to the Jones Act, 46 U.S.C. §30104, et seq."). "A Jones Act claim is an in personam action for a seaman who suffers injury in the course of employment due to negligence of his employer, the vessel owner, or crew members." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 441 (2001).

Ortoli argues that the case should be remanded because he has properly pleaded a Jones Act claim, and the Supreme Court has held that a Jones Act claim "is not subject to removal to federal court even in the event of diversity of the parties." Dkt. No. 14 at 8 (quoting *Lewis*, 531 U.S. at 455). Janicki concedes that Jones Act claims are not typically removable, but argues that removal was still proper because Ortoli's Jones Act claim was fraudulently pleaded. *Id.* at 7–8. Specifically, Janicki avers that none of the Defendants employed Nargeolet, and a Jones Act claim only lies against the injured person's employer. *Id.* at 8. It further contends that even if Ortoli properly pleaded a Jones Act claim, the Court should sever and remand that claim while keeping the remainder of the case. *Id.* at 10–11.

ORDER GRANTING MOTION TO REMAND - 4

### 1. Properly Pleaded Jones Act Claims Are Not Removable

District courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). The "saving to suitors" clause "preserves remedies and the concurrent jurisdiction of state courts over some admiralty and maritime claims." *Lewis*, 531 U.S. at 445. Thus, general maritime cases filed in state court are not removable absent an independent basis for subject matter jurisdiction. *See, e.g.*, *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1069 (9th Cir. 2001); *Coronel v. AK Victory*, 1 F. Supp. 3d 1175, 1179 (W.D. Wash. 2014). Diversity does not provide a basis for removing Jones Act claims, which are "not subject to removal to federal court even in the event of diversity of the parties." *Lewis*, 531 U.S. at 455. This is because the Jones Act incorporates the Federal Employees Liability Act ("FELA"), 45 U.S.C. § 51 et seq., *see* 46 U.S.C. § 30104 ("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section."), and "FELA actions brought in state court are nonremoveable," *Colonel*, 1 F. Supp. 3d at 1189; *see also Lewis*, 531 U.S. at 455 (noting that FELA is "incorporated by reference into the Jones Act").

### 2. Ortoli's Jones Act Claim is Not Fraudulently Asserted

Janicki concedes the general non-removability of Jones Act claims, but argues that "an exception exists where a resident defendant has been fraudulently joined to prevent removal." Dkt. No. 19 at 7. "[T]he party invoking federal court jurisdiction on the basis of fraudulent joinder bears a 'heavy burden' since there is a 'general presumption against fraudulent joinder.'" *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1046 (9th Cir. 2009)); *see also Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018). At least in some contexts, courts may look beyond the pleadings to evaluate a fraudulent joinder claim. *See Morris*, 236 F.3d at 1068 ("[F]raudulent

joinder claims may be resolved by . . . consider[ation of] summary judgment-type evidence such as affidavits and deposition testimony." (quoting *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995))). With Jones Act claims in particular, some courts have held that "courts may pierce the pleadings and examine affidavits, declarations, and other materials beyond the complaint to discern whether the plaintiff fraudulently pled his [Jones Act] claim." *Creps v. Truco Marine, LLC*, No. C-11-01751-DMR, 2011 WL 5577083, at *3 (N.D. Cal. Nov. 8, 2011); *see also Lackey v. Atlantic Richfield Co.*, 990 F.2d 202, 207 (5th Cir. 1993) (same); *but see Leloff v. Georgia-Pacific Consumer Products, Ltd.*, No. 3:16-cv-00539-MO, 2016 WL 3457166, at 2–3 (D. Ore. June 23, 2016) (noting that the Ninth Circuit "has not directly addressed whether it is permissible for a court to look beyond the pleadings to determine if a plaintiff's Jones Act claim was removed properly" and referring to the authority allowing courts to pierce the pleadings as the "minority rule"); *Green v. Ross Island Sand & Gravel Co.*, No. C13-05431 SI, 2014 WL 262133, at *3 (N.D. Cal. Jan. 23, 2014) ("The Ninth Circuit has not directed district courts to look beyond plaintiff's pleadings on a motion to remand, and this Court will not do so here."). A court that does not look beyond the pleadings must accept the plaintiff's factual allegations as true. *Braidwood v. Warn*, No. C09-687MJP, 2009 WL 10675667, at *2 (W.D. Wash. Aug. 3, 2009). When a court considers summary judgment type-evidence, the court "resolv[es] all disputed facts and ambiguities in current substantive law in the plaintiff's favor" in determining whether the plaintiff "has no reasonable possibility of establishing a Jones Act claim on the merits." *Unterberg v. Exxon Mobil Corp.*, No. 14-00181-JMS-RLP, 2014 WL 3420779, at *5 (D. Haw. July 10, 2014).

Whether a claim has been fraudulently pleaded turns on "whether the plaintiff can state a reasonable or colorable claim for relief under the applicable substantive law[.]" *Weeping Hollow Ave. Tr.*, 831 F.3d at 1113 (citation omitted); *see also Grancare, LLC*, 889 F.3d at 548 (examining whether there was a "*possibility* that a state court would find that the complaint states a cause of

ORDER GRANTING MOTION TO REMAND - 6

action against any of the resident defendants"); *Unterberg*, 2014 WL 3420779, *7 (considering whether there was a "possibility' of a valid Jones Act claim").

Applying these standards, the Court considers whether there is a possibility that a state court would find that the complaint states a cause of action under the Jones Act. "A tort claim under the Jones Act is properly plead[ed] if it contains allegations that the injured person is a seaman who was acting within the scope of his employment when he was injured." *Rodriguez v. Flota Mercante Grancolombiana, S.A.*, 703 F.2d 1069, 1072 (9th Cir. 1983); *Cooper v. Vigor Marine, LLC*, No. 22-00275 HG-RT, 2023 WL 4666656, at *3 (D. Haw. July 19, 2023) (same); *see also* 46 U.S.C. § 30104 ("A seaman injured in the course of employment or, if the seaman dies from the injury, the personal representative of the seaman may elect to bring a civil action at law, with the right of trial by jury, against the employer."). Janicki does not contest that Nargeolet was acting as a "seaman" at the relevant time. Dkt. No. 19 at 7–10. The Jones Act does not define the term "seaman," and "[t]he test regarding who is a seaman under the Jones Act is a mixed question of law and fact." *Boy Scouts of Am. v. Graham*, 86 F.3d 861, 864 (9th Cir. 1996). Specifically, to qualify as a seaman under the statute, two elements must be shown: "the worker's duties must contribute to the function of the vessel or to the accomplishment of its mission, and the worker 'must have a connection to a vessel in navigation . . . that is substantial in terms of both its duration and its nature.'" *Id.* (quoting *Chandris, Inc. v. Latsis,* 515 U.S. 347, 368 (1995)). According to Ortoli, OceanGate hired Nargeolet to serve as a guide and navigator because of his extensive experience diving around the wreckage of the Titanic, and he served in these roles during the TITAN's mission. Dkt. No. 1-1 at 3, 12–13. Ortoli argues that Nargeolet thus "contribute[d] to the function of the vessel or to the accomplishment of its mission." Dkt. No. 25 at 6 (quoting *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 355 (1991)). Nargeolet was therefore "doing the ship's work," *Wilander*, 498 U.S. at 355, and the first part of the test is satisfied, *Boy Scouts of*

ORDER GRANTING MOTION TO REMAND - 7

*Am.*, 86 F.3d at 864. The complaint also alleges that Nargeolet "spent in excess of 30 percent of his time working on TITAN (or its supporting surface ship in the same fleet)," Dkt. No. 1-1 at 19, which Janicki does not contest at this point. These facts, plus the reality that Nargeolet was on board for the duration of the mission, are sufficient to allege that his connection to the vessel was also "substantial in terms of both its duration and its nature," satisfying the second part of the test. *Boy Scouts of Am.*, 86 F.3d at 864. Therefore, Ortoli has adequately pleaded that Nargeolet was acting as a "seaman" for purposes of the Jones Act.

The Court next considers whether Ortoli has adequately pleaded that Nargeolet was an employee under the Jones Act. To determine whether a person is a Jones Act employee, courts "look at the venture as a whole" and consider, "Whose orders controlled the master and the crew? Whose money paid their wages? Who hired the crew? Whose initiative and judgment chose the route and the ports?" *Cosmopolitan Shipping Co. v. McAllister*, 337 U.S. 783, 795 (1949); *see also Glynn v. Roy Al Boat Mgmt. Corp.*, 57 F.3d 1495, 1499–1500 (9th Cir. 1995), *abrogated in part on other grounds by Atl. Sounding Co., Inc. v. Townsend*, 557 U.S. 404, 408 (2009); *Cooper*, 2023 WL 4666656, at *4 ("For Jones Act cases, the degree of control exercised over the crew members including factors such as payment, direction, supervision, and source of the power to hire and fire generally determines the employer-employee relationship."); *Allegro Ventures, Inc. v. Almquist*, No. 11-cv-2009-L (WVG), 2014 WL 1871628, at *10 (S.D. Cal. May 8, 2024) (considering the "totality of the circumstances" to determine if an employment relationship existed).

Janicki contends that Ortoli's Jones Act claim was fraudulently pleaded because Nargeolet was an "unpaid passenger," not an employee of any of the Defendants. Dkt. No. 19 at 8–9. Janicki further argues that Nargeolet was on board for "validation and buzz" rather than as a paid employee. *Id.* at 9. Janicki has filed a declaration from its President stating that the company "has never had any responsibility for supervising or directing any crew members or passengers on board

the 'Titan' submersible or any support vessels." Dkt. No. 20 at 1–2. Its Vice President of Human Resources concurs that the company has never employed, retained, or paid Nargeolet. Dkt. No. 21 at 2. The Chief Executive Office of OceanGate states that he is "not aware of any employment agreement between OceanGate and [Nargeolet]" and Nargeolet "does not appear in the OceanGate payroll records and was not issued a W2 or 1099 by OceanGate." Dkt. No. 22 at 2. Electroimpact has made the same representations. Dkt. No. 23 at 2.

Even if the Court considers these declarations, Janicki has not met its burden of showing that Ortoli cannot state a possible claim under the Jones Act. *Weeping Hollow Ave. Tr.*, 831 F.3d at 1113. Janicki accuses Ortoli of "name-everyone-and-see-what-sticks" pleading on this issue, Dkt. No. 19 at 9, but the complaint specifically alleges that Nargeolet was an employee of OceanGate. Dkt. No. 1-1 at 3. The complaint further alleges that OceanGate "hired" Nargeolet as a crew member aboard the Titan because of his "deep knowledge and prior experience of the *Titanic* shipwreck site," which meant that he "was uniquely qualified to guide a submersible (and its pilot) around the many potential dangers presented by the shipwreck, and to explain to persons on the submersible what any viewable portions of the Titanic's wreckage were." *Id.* at 12–13. The complaint alleges that Nargeolet "was tasked onboard the submersible vessel TITAN with aiding in navigation near the Titanic wreckage, collecting scientific data, identifying degradation and wreckage changes, and identifying portions of the Titanic for other crew members," and the vessel imploded while he was "engaged in navigation." *Id.* at 19. In addition, OceanGate referred to Nargeolet and the others on board as "mission specialists" rather than passengers. *Id.* at 14–15. The complaint also alleges that at the time of implosion, the TITAN "was owned, operated, managed, and/or controlled by one or more Defendants." *Id.* at 16. Ortoli further contends that Nargeolet was compensated for his work: OceanGate "gave him free passage in exchange for his services" while the others "donated" $250,000 to secure their spots on the vessel. *Id.* at 14; Dkt.

ORDER GRANTING MOTION TO REMAND - 9

No. 25 at 8. The fact that Nargeolet was not paid a traditional wage is not dispositive. *See, e.g.*, *Boy Scouts of Am.*, 86 F.3d at 865 ("It is ordinarily for the trier of fact to determine whether someone who does not work for wages is a maritime worker covered by the Jones Act" and finding an issue of fact regarding whether a volunteer "mate" aboard a vessel for 10 days was a seaman). In addition, OceanGate designed the TITAN to voyage to the Titanic, Dkt. No. 1-1 at 4; there is no suggestion that Nargeolet was free to alter OceanGate's chosen destination.[3] Given these indicia of selection, control, and compensation, Ortoli has stated a possible Jones Act claim against OceanGate. Thus, the Jones Act claim was not fraudulently pleaded, it was not removable, and remand is warranted. *See, e.g.*, *Fields v. Halvorson*, No. C21-1591 RSM, 2022 WL 4533737, at *2 (W.D. Wash. Sep. 28, 2022) (remanding case with Jones Act claim).

       3.   <u>The Court Will Not Sever the Claims</u>

Janicki argues that "[e]ven if the Court were to find that OceanGate employed Mr. Nargeolet on the fateful TITAN voyage . . . the Jones Act claim against OceanGate should be severed and remanded, with the Court retaining jurisdiction over all other defendants." Dkt. No. 19 at 10. It argues that severance is appropriate because Ortoli has fraudulently asserted a Jones Act claim. *Id.* at 10–11. However, as set forth above, the Court does not agree with that assertion.

Janicki also cites one out of district case in support of its request for severance. *Id.* at 10 (citing *Harrold v. Liberty Ins. Underwriters, Inc.*, Civ. No. 13-762-JJB-SCR, 2014 WL 688984 (M.D. La. Feb. 20, 2014)). Ortoli responds that *Harrold* is devoid of analysis, "has absolutely no

---

[3] Janicki contends that Nargeolet's employer was non-party RMS Titanic, Inc. Dkt. No. 19 at 8 (citing https://www.discovertitanic.com/about-us/team/ (last accessed January 31, 2025)). The complaint confirms that Nargeolet served as "the director of underwater research at RMS Titanic, which owns the salvage rights to the sunken ship." Dkt. No. 1-1 at 3. True enough, "only one person, firm, or corporation can be sued as employer" under the Jones Act, *Cosmopolitan Shipping Co.*, 337 U.S. at 791 (1949), but Janicki does not argue, and there is no evidence to show, that RMS Titanic, Inc. had any role with the TITAN's mission or selecting Nargeolet to participate in it. Stated another way, Janicki does not argue that RMS Titanic, Inc. was Nargeolet's employer for purposes of the Jones Act.

1  precedential value[,] and offers no useful guidance." Dkt. No. 25 at 8. Notably, the *Harrold* court
2  reconsidered its opinion and remanded the entire case, holding that "the Jones Act claim is not
3  removable, so the entire case should be remanded." *Harrold*, 2014 WL 5801673, at *2 (M.D. La.
4  Nov. 7, 2014) (noting that "Courts have consistently found that, if a Jones Act claim is joined with
5  another general maritime law claim, the Court should remand the entire suit to state court.").
6  *Harrold* thus does not support Janicki's position.

7  Ortoli also argues that "severance and remand of the Jones Act claim is not an option for
8  this case" because it was removed based on diversity, not a federal question. Dkt. No. 25 at 9.
9  Ortoli notes that "[u]nder 28 U.S.C. §1441(c), when a civil action includes a claim arising under
10 the laws of the United States within the meaning of § 1331" as well as "a claim that has been made
11 non-removable by statute, the district court must sever all non-removable claims and remand them
12 to state court while retaining the federal question claims." *Id.* He contends that when, as here, "the
13 basis of a federal district court's subject matter jurisdiction is diversity jurisdiction, the district
14 court cannot engage in a partial remand." *Id.* The Court agrees.

15 Janicki removed this case solely based on diversity jurisdiction. Dkt. No. 1 at 2–3. And it
16 does not dispute that Ortoli's maritime claims were not removable "absent some other
17 jurisdictional basis, such as diversity or federal question jurisdiction." Dkt. No. 19 at 7 n.3 (quoting
18 *Morris*, 236 F.3d at 1069 (emphasis removed)).[4] Janicki therefore does not contend that the Court
19 has federal question jurisdiction under Section 1331. Because Section "1441(c) applies only where
20 the otherwise removable claim is one that falls within the federal question jurisdiction conferred
21 by 28 U.S.C. § 1331," and "because district courts may undertake a piecemeal remand of certain

---

[4] The "majority view" is that "general maritime claims are not removable, despite the changes to 28 U.S.C. § 1441." *Harrold*, 2014 WL 5801673, at *3 (citing, among other authorities, *Bartman v. Burrece*, No. 14–80, 2014 WL 4096226 (D. Alaska Aug. 18, 2014)); *see also Podziewski v. Cabras Marine Corp.*, No. 1:24-cv-00014, 2024 WL 4869665, at *4 (D. N. Mar. I. Nov. 22, 2024).

ORDER GRANTING MOTION TO REMAND - 11

claims only when removal jurisdiction is based upon § 1331, courts cannot resort to a partial remand of an action that is properly before the court on diversity jurisdiction." *Willison v. Noble Drilling Expl. Co.*, No. CV 21-1520, 2022 WL 443808, at *6 (E.D. La. Feb. 14, 2022) (cleaned up); *see also id.* ("[A]s the Court's subject matter jurisdiction is based on complete diversity, the Court cannot sever and remand the Jones Act claim while retaining the general maritime law and state law claims. With respect to remanding claims in diversity cases, the proposition is all or nothing—and in this case, the Court must remand the entire action and all claims asserted therein."); *Unterberg*, 2014 WL 3420779, at *13 (holding that a Jones Act claim should not be severed and remanded because plaintiff's maritime claims arose under Section 1333 and they were thus not claims under Section 1331 for purposes of Section 1441(c)); *see also Bartel v. Am. Exp. Isbandtsen*, 64 F. Supp. 3d 856, 863–64 (M.D. La. 2014) (holding that because plaintiff's maritime claims arose under Section 1333, not Section 1331, Section 1441(c) was inapplicable).[5]

Furthermore, courts in this circuit and elsewhere have held that it is improper to sever and remand maritime claims that are not "separate and independent" from Jones Act claims. *Leloff*, 2016 WL 3457166, at *4 (explaining that "a number of district courts throughout the Circuit seem to agree that if a maritime law claim is not separate and independent from a Jones Act claim, the maritime claim must be remanded along with the Jones Act claim"); *see also Green*, 2014 WL 262133, at *3. Ortoli argues, and the complaint shows, that all of his claims "share a common nucleus of operative facts." Dkt. No. 25 at 10. As such, his maritime claims are not separate and independent of his Jones Act claims, and a partial remand is unwarranted and could result in inconsistent rulings. Severing and remanding only the Jones Act claim against OceanGate "would

---

[5] The Court notes that prior to 1990, Section 1441(c) applied to both diversity actions as well as those raising a federal question. The 1990 amendment to Section 1441(c), however, rendered it inapplicable to diversity cases. The Commentary on the 1990 Revision provides: "Under the amendment, a removal under § 1441(c) is henceforth permitted only in a federal question case, i.e., a case in which jurisdiction of the claim that furnishes the removal basis is one that arises under federal law." 28 U.S.C.A. § 1441, Commentary on 1990 Revision (West Supp. 1993).

ORDER GRANTING MOTION TO REMAND - 12

be inconsistent with principles of judicial efficiency and consistency" because "all claims arise out of the same set of operative facts." *Leloff*, 2016 WL 3457166, at *4.

The Court therefore remands the case in its entirety. *See Coronel*, 1 F. Supp. 3d at 1175 (remanding both Jones Act and general maritime law claims).

C.  **Ortoli is Not Entitled to Attorney's Fees or Costs**

Ortoli seeks an award of attorney's fees and costs pursuant to 28 U.S.C. 1447(c) if his motion to remand is granted. Dkt. No. 14 at 9–10. The district court may, in its discretion, include in an order remanding a case an award of attorney's fees "incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005).

Here, Janicki removed the case based on an objectively reasonable belief that the Jones Act claim was fraudulently pleaded because none of the Defendants employed Nargeolet. The fact that the Court finds that Ortoli has stated a plausible Jones Act claim does not mean that Janicki's position was objectively unreasonable. Moreover, the Court does not find, and Ortoli does not identify, any unusual circumstances that would justify an award of attorney's fees. *Martin*, 546 U.S. at 141. Therefore, Ortoli's request for an award of fees, costs, and expenses pursuant to 28 U.S.C. § 1447(c) is denied.

### III.  CONCLUSION

For the foregoing reasons, the Court GRANTS Ortoli's Motion to Remand. Dkt. No. 14. The Court further ORDERS that

1. Pursuant to 28 U.S.C. § 1447(c), all further proceedings in this case are REMANDED to the Superior Court for King County in the State of Washington;

  2. The Clerk of the Court shall mail a certified copy of this Order to the Clerk of the Court for the Superior Court for King County Washington;

  3. The Clerk of the Court shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington; and

  4. The Clerk of the Court shall CLOSE this case.

Dated this 31st day of January, 2025.

*Lauren King*
Lauren King
United States District Judge

ORDER GRANTING MOTION TO REMAND - 14